FILED

2022 Aug-09  AM 09:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **PINKY WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:21-cv-00384-LSC** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.     Introduction

The plaintiff, Pinky Walker ("Walker" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). Walker timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

The Appeals Council remanded the case back to the ALJ to consider additional new, material evidence that related to the period at issue that had a

reasonable probability of changing the outcome and to further develop Plaintiff's maximum residual functional capacity after he gave minimal weight to the only medical opinion pertaining to Plaintiff's physical residual functional capacity. (Tr. 151-53.) Walker was 53 years old on her alleged disability onset date, 56 years old at the time of the Administrative Law Judge's ("ALJ") first decision, and 57 years old at the time of the ALJ's second decision. (Tr. 41, 145, 271.) She has completed two years of college, earning her associate degree. (Tr. 62, 307.) She has past relevant work as a bankruptcy court clerk, which she did for twenty-five years prior to the onset of her alleged disability. (*Id.*) Plaintiff alleged she has been disabled since September 30, 2015. (Tr. 302.) Plaintiff claims her disability is due to rheumatoid arthritis and diabetes. (Tr. 306.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. (*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. (*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The first step requires the evaluator to determine whether the plaintiff is engaged in

substantial gainful activity ("SGA"). (*Id.*) §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. (*Id.*) §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. (*Id.*) The decision depends on the medical evidence contained in the record. (*See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled)).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. (*Id.*)

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's

residual functional capacity ("RFC") before proceeding to the fourth step. (*See id.* §§ 404.1520(e), 416.920(e)). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. (*See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv)). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. (*See id.*)

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. (*Id.*) §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that the plaintiff met the insured status requirements of the Social Security Act and that the plaintiff had not engaged in substantial gainful employment since September 30, 2015. (Tr. 33.) The ALJ determined that Walker suffered from the following severe impairments: "obesity, degenerative disc disease of the cervical spine, status post anterior cervical discectomy fusion, and rheumatoid arthritis." (*Id.*) These

impairments "significantly limit the ability to perform basic work activities." (*Id.*) While the ALJ found that these issues limit the plaintiff's ability, the ALJ stated that Walker does not have an impairment or combination of impairments that meets the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 34.) The ALJ determined that the plaintiff has the following RFC:

> To perform light work as defined in 20 CFR 404.1567(b) except with the following restrictions. She can frequently push and pull with the bilateral upper extremities and can frequently use foot controls bilaterally. She can frequently reach in all directions bilaterally and frequently handle, finger, or feel. The claimant can never climb ramps, stairs, ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She can have occasional exposure to extreme cold, extreme heat, wetness, humidity, fumes, dusts, odors, gases, and poor ventilation. She can have no exposure to hazards, such as work at unprotected heights or around dangerous moving machinery.

(Tr. 35-36.)

The ALJ found that Ms. Walker could perform her past relevant work as a court clerk, according to the restrictions provided in the RFC. (Tr. 41.) According to testimony from the vocational expert (VE), as well as Plaintiff's own description of her work and information contained in the Dictionary of Occupational Titles (DOT), the Plaintiff is capable of performing her previous work as a bankruptcy court clerk "as actually and generally performed." (Tr. 41, 90.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the

Social Security Act, from September 30, 2015, through the date of this decision."
(Tr. 41.)

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. (*See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841) (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. (*See Miles v. Chater*, 84 F.3d 1397, 1400) (11th Cir. 1996)).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Dyer v. Barnhart*, 395 F.3d 1206, 1210) (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" (*Parker v. Bowen*, 793 F.2d 1177,

1181) (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. (*Miles*, 84 F.3d at 1400) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." (*Bridges v. Bowen*, 815 F.2d 622, 624) (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. (*See Bowen v. Heckler*, 748 F.2d 629, 635) (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.   Discussion

Plaintiff argues that the ALJ erred by providing only superficial reasoning for rebutting the opinion of Dr. Jeffrey Curtis, Plaintiff's treating physician, and by failing to fully evaluate the opinion of Dr. Jeremy Goodwin, as directed by the Appeals Council. (Doc. 10 at 17-18.) Plaintiff also asserts that the ALJ erred by not affording greater weight to the opinion of Plaintiff's past employer because she was

not a medical source. (Doc. 10 at 19-20.) For the reasons set forth below, the Court finds the ALJ erred, and this case is due to be remanded.

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a

physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.[1]

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also*

---

[1] New regulations came into effect in 2017, which provide revised instructions to the ALJ for evaluating medical opinions. For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." In contrast, 20 C.F.R. §§404.1527 and 416.927, the regulations that govern for claims filed before March 27, 2017, prioritize the treatment relationship, giving more weight to a treating source's medical opinion. Because the Plaintiff filed for benefits before the new regulations went into effect, the old regulations apply this case. (*See* Tr. 271.)

*Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). If the treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the ALJ will give it "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source is not entitled to "controlling weight," the ALJ will consider factors including the examining relationship, treatment relationship, supportability, consistency, and specialization in determining how much weight to give a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

On the other hand, the opinions of a one-time examiner or of a non-examining source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Still, though, medical consultants or medical experts are highly qualified medical specialists who are experts in the Social Security disability

programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(iii), 416.927(e)(2)(iii); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180. Indeed, a medical expert's opinion may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances, such as when the medical expert has reviewed the complete case record. *See* SSR 96-6p, 1996 WL 374180. In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not

determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Following directions from the Appeals Council, the ALJ examined the treatment notes of Jeffrey Curtis, M.D., the claimant's treating rheumatologist. These notes indicate that the claimant continued to have joint pain and stiffness after achieving remission, "most of her pain is likely related to damage." (Tr. 706.) However, in this same exam, Dr. Curtis noted that claimant's neck pain was stable on Tylenol and her arthritis was described as "doing well based on exam today." (*Id.*) A physical examination on May 26, 2016, showed that the claimant reported neck pain and had decreased range of motion to the right. (Tr. 736.) The ALJ highlighted that throughout the notes, she was described as "doing pretty well on Enbrel and MTX" related to her rheumatoid arthritis, and the record notes that she had no recent flares or new concerns. (*Id.*) The record also states that claimant struggled with pain in her hands, shoulders, and feet, but it was "manageable." (Tr. 704.) Walker stated that she takes Tylenol for the pain, but she does so very infrequently and refuses to begin a regular Tylenol regimen. (Tr. 706.)

When it remanded the case to the ALJ for further consideration and development of the record, the Appeals Council explained that one of its reasons for doing so was that the ALJ's decision "d[id] not address notes in treatment records

from Jeffrey Curtis, M.D., the patient's treating rheumatologist, which indicate the claimant continued to have joint pain and stiffness after achieving remission or Dr. Curtis's note that 'most of her pain is likely related to damage.'" (Tr. 152.) The Appeals Council added, "This opinion appears consistent with imaging reports showing damage to the claimant's hand and foot joints prior to attaining remission." (*Id.*)

The record shows that while the ALJ discussed the treatment notes and imagining reports briefly, he did not state the weight given to the opinion of Dr. Curtis. (Tr. 37.)  As Plaintiff's treating physician, Dr. Curtis's opinion was entitled to substantial or considerable weight, absent a showing of good cause to the contrary. In describing the findings of the imagining reports referred to by the Appeals Council, the ALJ stated that they showed "no synovitis or joint effusions of the upper or lower extremities." However, the ALJ neglected to mention that the report found "Grade 1 synovial thickening in the right dorsal wrist," as well as "Grade 2 synovial thickening and erosion in the right and left 2nd metacarpal heads." (Tr. 609.) The conclusions also showed a "[m]ildly enlarged median nerve on the right."

It is apparent that the ALJ did not give Dr. Curtis's opinion controlling weight, but he did not state what weight he gave to Dr. Curtis's opinion or set forth good cause for affording Dr. Curtis's opinion less than substantial or considerable weight.

When considering the factors for determining what weight to give a medical opinion set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c), Dr. Curtis's examining and treating relationship with Plaintiff, as well as his specialty in rheumatology, weigh in favor of giving his opinion greater weight on "issues related to his… area of specialty." Furthermore, the ultrasound supports Dr. Curtis's opinion that Plaintiff's pain is due to damage. (Tr. 609.)

The Court thus finds that the ALJ erred by failing to clearly articulate his reasons for giving Dr. Curtis's opinion less weight, and therefore, this case is due to be remanded. Because the ALJ erred in his evaluation of Dr. Curtis's opinion, the Court need not consider Plaintiff's other claims of error.

## IV.   Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and briefs of the parties, the decision of the Commissioner of Social Security denying Plaintiff's claims for DIB is REVERSED and REMANDED for further administrative proceedings consistent with this opinion. A separate closing order will be entered.

**DONE** AND **ORDERED** ON AUGUST 9, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

206728